Dear Mr. Honeycutt:
This office is in receipt of the request you made on behalf of Livingston Parish's Gravity Drainage District #5 (the "District") for an Opinion from the Attorney General on whether the District: (1) has the authority to enter certain private property to maintain a ditch; and (2) has any other rights and/or liabilities associated with the ditch in question. Your concerns and the Attorney General's responses to those concerns are presented as follows:
1. WHETHER LIVINGSTON PARISH'S GRAVITY DRAINAGE DISTRICT #5 HAS THEAUTHORITY TO ENTER CERTAIN PRIVATE PROPERTY TO MAINTAIN A PARTICULARDITCH ?
This Department previously opined a duly-constituted drainage district has the authority to enter private property in order to exercise its powers and functions.[1] We now find no reason to repeal or alter that (previously-issued) opinion. Relying upon and following the reasoning behind our previously-issued opinion, we opine the following.
LA.REV.STAT. § 38:113 provides Louisiana's various drainage districts shall have control over all public drainage channels or outfall canals within the limits of their districts which are selected by the district, and for a space of one hundred feet (100') on both sides of the banks of such channels or outfall canals, and one hundred feet (100') *Page 2 
continuing outward from the mouth of such channels or outfall canals, whether the drainage channels or outfall canals have been improved by the drainage district, or have been adopted without improvement as necessary parts of or extensions to improved drainage channels or outfall canals.[2]
These drainage ditches and may adopt rules and regulations for preserving the efficiency of the drainage channels or outfall canals.[3]
LA.REV.STAT. § 39:219 additionally mandates no person shall: **********
 (9) In any manner obstruct drainage channels or violate any of the rules or regulations adopted and promulgated by the levee or drainage districts for preserving and maintaining the efficiency of the drainage channels in their districts.[4]
Although it may be argued LA.REV.STAT. § 38:219, read in its entirety, pertains to an obstruction of the channel itself, we are of the opinion that an individual who obstructs a drainage district's access to a public channel may be responsible for the obstructed channel by his refusal to allow access thereto. And while the servitude established by LA.REV.STAT. § 38:113 is certainly limited only to maintaining the efficiency of drainage channels, it is still nevertheless a servitude.
Reciprocally, Article 743 of Louisiana's Civil Code states, "Rights that are necessary for the use of a servitude are acquired at the time the servitude is established. They are to be exercised in a way least inconvenient for the servient estate."[5] And the Code's Article 744
states, "The owner of the dominant estate has the right to make at his expense all the works that are necessary for the use and preservation of the servitude."[6] We are of the opinion that these accessory rights include the right of access to the ditch in question in order to clean and maintain it. This has been assumed by the Louisiana Supreme Court ever since Petit Anse Coteau Drainage District v. Iberia and V.R.Co., 124 La. 502, 512 (1909). Accordingly, the District enjoys a servitude over public drains/ditches and cannot be prevented from exercising those rights and duties by a particular landowner. And in order to gain access to a particular drainage ditch, the District may compel property owners to remove fences and other obstructions which *Page 3 
prevent access thereto since the existence of those obstructions prevent the reasonable use of the servitude granted by LA.REV.STAT. § 38:113.
LA.REV.STAT. § 38:1767 defines the powers and duties of a drainage district's commissioners as follows:
 The board of drainage commissioners may open all natural drains which they deem necessary in their respective districts and perform all work connected therewith, which they may deem necessary to make the opening of the natural drains effective. They may cut and open new drains, ditches, and canals wherever deemed necessary. In order to carry out the drainage works, the drainage commissioners may enter into contracts for the performance of these works, or purchase machinery and have the work performed under their supervision, and perform all other acts necessary to fully drain all the land in their districts and maintain the drainage when established.[7]
And LA.REV.STAT. § 38:1794(D) permits a board of drainage commissioners authority to "pass all needful regulations necessary to keep the beds and the banks of all canals, drains, and ditches under their supervision and control free from underbrush, trees, and weeds so as to properly maintain the drainage through the canals, drains, and ditches."[8]
So we are of the opinion LA.REV.STAT. § 38:1767 and LA.REV.STAT. § 38:1794(D) are illustrative of the fact that a drainage district's board of commissioners has the authority to perform all necessary work associated with the maintenance of the drains, ditches, and canals within its district.
Our position is then generally bolstered by LA.REV.STAT. § 38:1804
(made effective July 21, 1977), which pertinently provides:
 A. In addition to the powers and authority heretofore provided by law and notwithstanding provisions of any other law to the contrary, any gravity drainage district existing on the effective date of this Section and with the boundaries as they exist on the effective date of this Section is hereby vested with full power and authority, acting through its governing authority, to:
 (1) Drain lands in said district by the construction, maintenance, and operation of gravity and/or forced drainage facilities, including drains, drainage canals, ditches, pumps, and pumping plants, dikes, levees, and other related works. *Page 4 
**********
 (3) Levy special taxes on all the property within such district for the purpose of maintaining, operating, constructing, and improving the drainage works in such district in the manner authorized by Article VI, Section 32 of the Louisiana Constitution of 1974, after having been authorized to do so at a special election held in accordance with the provisions of Part II, Chapter 4, Title 39 of the Louisiana Revised Statutes.
**********
 (6) Cut and open any drains and canals and open, deepen and enlarge natural drains within or without the district and perform all work in connection therewith which may be deemed necessary to provide drainage for the lands in the district, and perform all other acts necessary to drain the land in the district and maintain the drainage when established.
**********
 B. The authority herein granted may be exercised and the works of improvement herein authorized may be constructed within or without the limits of the district so long as they inure to the direct benefit of the district and the inhabitants thereof.[9]
We are accordingly of the opinion that the District has the authority to enter the property in question to maintain the ditch in question.
2. WHETHER LIVINGSTON PARISH'S GRAVITY DRAINAGE DISTRICT #5 HAS ANYOTHER RIGHTS AND/OR LIABILITIES ASSOCIATED WITH THE PARTICULAR DITCH INQUESTION ?
The rights and/or liabilities of the District relative to the particular ditch in question can be analogized to the rights and/or liabilities generally associated with a dominant estate and its right to use a servitude. Although gravity drainage districts, by virtue of the above-cited authority, have the power to establish and maintain drainage on land within their respective districts, they may not do so in contravention of Article I, § 4 of the Louisiana Constitution of 1974, which prohibits the taking of property without due process of law. And gravity drainage districts cannot enter private property and make natural drains more burdensome by increasing the natural flow of water without just *Page 5 
compensation to the land's owner.[10] In order for a gravity drainage district to enter onto a private landowner's property for purposes of cleaning trees, brush, and weeds from a natural drain located thereon, the gravity drainage district must either compensate the landowner for damage sustained due to the burden imposed on the landowner's property or have acquired the right to enter onto the landowner's property by some other means.[11]
So, in specific response to your second inquiry, the District cannot enter the private landowner's property to maintain the ditch in question without providing her/them just compensation for any damages sustained as the result of the District's efforts to maintain the ditch.
As an aside and in an effort to provide you with a comprehensive response to your inquiry, we refer you to LA.REV.STAT. § 38:1810. The statute states:
 A. No gravity drainage or sub-drainage district shall be liable for an act or omission of a person that arises from his execution of a contract with the district for the clearing or spraying of vegetation, and which causes harm to the property on which the vegetation is being cleared or on which the spraying of herbicide, pesticide, or other weed or vegetation control chemical occurs. The provisions of this Section shall be limited to immunity for damage to property only, and shall not be construed to relieve the contractor from any liability.
 B. The immunity provided by this Section shall be in addition to any other immunity, defense or remedy provided by law to the gravity drainage or sub-drainage district or to its officers or employees.[12]
This should provide you with a better sense of the District exposure (or lack thereof) to liability relative to the maintenance of the drainage within its jurisdiction. *Page 6 
If we may be of further assistance, please do not hesitate to contact the undersigned.
 Yours very truly,
 CHARLES C. FOTI, JR.
 ATTORNEY GENERAL
 DAVID A. YOUNG
 Assistant Attorney General
 ATTACHMENT *Page 1 
Opinion No. 79-1015
December 12, 1979
22-1 Drainage and Drainage Districts
A drainage district is empowered to enter the property of public landown in order to maintain the efficiency of drainage channels in furtherance thereof may compel private landowner to remove certain obstructions impeding the access thereto. La.R.S. 38:113; La.R.S.38:219(9); La.C.C. Art. 743; La.C.C. Art. 744 Scott v. Red River-Bayou Pierre Leve and Drainage District of La., 7 So. 2d 429 (La.App. 1942) Petit Anse Coteau Drainage District v. Iberia and V.R.Co., 124 La. 502,50 So. 512 (1909)
Mr. Gregory W. Belfour Assistant District Attorney Fourteenth Judicial District Post Office Box 3206 7th Floor-One Lakeside Plaza Lake Charles, Louisiana 70602
Dear Mr. Belfour:
On behalf of Gravity Drainage District No. 7 of Ward 8 of Calcasieu Parish (District), you have asked for an opinion from this office regarding the following, to wit:
 (1) Whether the District may enter the premises upon which the channels exist without permission of the owner and/or without conventional servitudes?
 (2) Can commissioners of the District compel property owners to remove fences and other obstructions which prevent access to and improvement of the channels, especially in those cases in which no conventional servitudes exist?
(1) It is the opinion of this office that a duly constituted Drainage District has the authority to enter private property in order to exercise its powers and functions. La.R.S. 38:113 grants a servitude to levee and drainage districts over all public channels within its limits and for a space of 100 feet on each side of the channel. One of the functions of the various drainage districts is to preserve and maintain the efficiency of drainage channels for which they may adopt rules and regulations therefor. See: La.R.S. 38:1764 (Gravity Drainage Districts); La.R.S.38:113; and Scott v. Red River-Bayou Pierre Levee and Drainage Districtof Louisiana, 7 So.2d 429 (La.App. 1942).
If a landowner, whose property is subject to the legal servitude of drain for which the District has control and responsibility, could prevent the exercise of the District's duties by his mere refusal to allow access to the public drain, then the entire purpose of the District could be thwarted. Consequently, La.R.S. 38:219 provides, in pertinent part, that
No person shall:
 . . . .
 (9) In any manner obstruct drainage channels or violate the rules and regulations adopted and promulgated by the levee or drainage districts for preserving and maintaining the efficiency of the drainage channels in their districts.
Although it may be argued that La.R.S. 38:219, read in its entirety, pertains to an obstruction of the channel itself, we certainly feel that an individual who obstructs a drainage district's access to a public channel may be responsible for the obstructed channel by his refusal to allow access thereto.
However, even if La.R.S. 38:219 cannot be cited as authority to enjoin a landowner from preventing *Page 2 
access to a public drain, the general laws of servitudes do give such authority, not to mention the jurisprudence.
Although the servitude established by La.R.S. 38:113 is certainly limited only to maintaining the efficiency of drainage channels, it is still nevertheless a servitude.
La.C.C. Art. 743 provides that:
 Rights that are necessary for the use of a servitude are acquired at the time the servitude is established. They are to be exercised in a way least inconvenient for the servient estate.
La.C.C. Art. 744 provides that:
 The owner of the dominant estate has the right to make at his expense all the works that are necessary for the use and preservation of the servitude.
These accessory rights surely include the right of access to the channel in order to clean and maintain same. This has been assumed by the court ever since Petit Anse Coteau Drainage District v. Iberia and V.R.Co., 124 La. 502, 50 So. 512 (1909) which you have cited in your letter to this office.
Accordingly, the District enjoys a servitude over public drains and cannot be prevented from exercising those rights and duties by a particular landowner.
(2) In order to gain access to a particular drainage channel, the District may compel property owners to remove fences and other obstructions which prevent access thereto since the existence of those obstructions prevent the reasonable use of the servitude granted by La.R.S. 38:113.
If we may be of further service in this matter, please advise.
 Very truly yours,
 William Guste Jr.
 Attorney General
 By: David C. Kimmel
 Assistant Attorney General
[1] 1978-79 La. Op. Atty. Gen. 115, La. Atty. Gen. Op. No. 79-1015,1979 WL 38049 (La.A.G.). A copy of said Opinion is attached hereto for purposes of reference.
[2] See LA.REV.STAT. § 38:113.
[3] See Id.
[4] LA.REV.STAT. § 38:219(9).
[5] LA. CIV. CODE art. 743.
[6] LA. CIV. CODE art. 744.
[7] LA.REV.STAT. § 38:1767.
[8] LA.REV.STAT. § 38:1794(D).
[9] LA.REV.STAT. § 38:1804.
[10] Thibodeaux v. Landry, 351 So.2d 552 (La.App. 3 Cir., 1977).
[11] Parish of East Baton Rouge v. Pourciau, 387 So.2d 645 (La.App. 1 Cir., 1980); Thibodeaux v. Landry, supra.
[12] LA.REV.STAT. § 38:1810.